UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

KARLY KYZAR, SARAH LITTLE            CIVIL ACTION NO. _____
AND ELIZABETH PRUITT,
individually and on behalf of
all others similarly situated

VERSUS

BARCO ENTERPRISES, INC., JOHN D'ANTONI
MARIANNE HOOD, LOGAN MCCOY and
MICHAEL RYAN

### FLSA COLLECTIVE ACTION COMPLAINT

Plaintiffs file this FLSA Collective Action Complaint in connection with unpaid straight time, unpaid overtime, and an improperly reduced sub-minimum wage hourly rate paid to restaurant servers at The Chimes, a restaurant operated by the defendants at three locations in Baton Rouge and Covington.

1.

Plaintiffs and all others similarly situated have worked for defendants as servers at The Chimes restaurant. Plaintiffs and the collective action class were pressured by defendants to work "off the clock" without being compensated for mandatory work performed before and after each meal shift. They were not paid an overtime rate of one and one-half times their regular hourly rate of pay when their hours (both compensated and uncompensated) exceeded 40 per week. For the hours they *were* compensated for, plaintiffs and the collective action class were improperly paid the federal sub-minimum wage "tipped" hourly rate. Defendants did not satisfy the strict federal requirements that would permit them to pay their servers the "tipped" wage rate.

2.

Plaintiffs bring this action as an opt-in collective action on behalf of themselves and all similarly situated individuals for violations of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq*. (the "FLSA"). Plaintiffs' claims are asserted as a collective action under 29 U.S.C. § 216(b).

**JURISDICTION AND VENUE**

3.

This Court has original jurisdiction pursuant to 28 U.S.C. § 1331 because this action is brought under the Fair Labor Standards Act.

4.

Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) because one or more defendants reside in this District and all defendants are residents of the State of Louisiana, and pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims herein occurred in this district.

**PARTIES**

*Plaintiffs*

5.

Karly Kyzar, Sarah Little and Elizabeth Pruitt are former employees of The Chimes who worked at the restaurant as servers, waiting tables at The Chimes. Plaintiffs bring this action on behalf of themselves and all other similarly situated individuals (the "FLSA Collective") pursuant to 29 U.S.C. § 216(b).

6.

Plaintiffs and the collective action class are current and former employees of defendants within the meaning of the FLSA.

*Defendants*

7.

Barco Enterprises, Inc. is a Louisiana corporation with its principal place of business in Baton Rouge, Louisiana. Upon information and belief, Barco Enterprises operates as "The Chimes" and is domiciled in Baton Rouge. Barco Enterprises is identified as plaintiffs' "employer" on the W2s issued to them in connection with their employment at The Chimes.

8.

Logan McCoy is one of the general managers employed at The Chimes restaurants. As a general manager, he has authority to hire and fire plaintiffs. During the time plaintiffs were employed at The Chimes, he implemented the scheme, developed by The Chimes' ownership and previous managers, by which plaintiffs would be pressured to work off the clock before and after each shift. He and the other general managers at The Chimes exerted control, oversight, and direction over the plaintiffs and similarly situated employees. He was an "employer" of the plaintiffs as that term is defined by the FLSA and is therefore personally liable to plaintiffs and the collective action class.

9.

John D'Antoni, Marianne Hood, and Michael Ryan are the owners of The Chimes restaurants. They are the "employers" as that term is defined by the FLSA of the plaintiffs and the collective action class. They are the executive officers of The Chimes restaurants and have ultimate control over all aspects of the operation of their restaurants. They implemented and profited from the illegal payroll policies and practices described herein. They knew or should have known that their restaurant for years has engaged in the policy and practice of pressuring servers to work off the clock for multiple hours each week for no compensation.

## FLSA COVERAGE

10.

At all times relevant to this action, defendants have been an enterprise engaged in commerce or in the production of goods for commerce as defined by the FLSA.

11.

At all times relevant to this action, defendants have been an enterprise with employees engaged in commerce or in the production of goods for commerce, and/or with employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person. Plaintiffs and the collective action class members have processed credit card transactions for defendants and their duties included serving foods and beverages (including foreign beers, wines, and liquors) that were produced outside of Louisiana.

12.

At all times relevant to this action, defendants have been a retail commercial enterprise whose annual gross volume of sales made or business done is not less than $500,000.00.

13.

At all times relevant to this action, defendants were employers as defined by the FLSA.

## FACTS

14.

"The Chimes" is the trade name of a Louisiana restaurant enterprise that currently has three locations – two in Baton Rouge and one in Covington. Plaintiffs were servers at The Chimes, but their W2s identified defendant Barco Enterprises, Inc. as their employer.

15.

The Chimes has a single website that advertises for all three locations. This website posts job advertisements for server and manager positions at all three of its locations. The job description for "server" is identical for employees at all three Chimes locations. During their time working at The Chimes, the plaintiffs personally observed that employees of The Chimes could, and did, move among the three locations. The Chimes also has a single "corporate" office responsible for the administration of all three Chimes locations.

16.

The position of server at The Chimes is a highly sought-after job – a server can often earn more than $150 in tips during a single meal shift. Naturally, many servers at The Chimes want to work as many meal shifts per week as possible. Knowing this, the defendants hatched a scheme to reduce their labor costs by pressuring servers to perform most of their non-tippable work "off the clock," before and after each meal shift. These uncompensated, off-the-clock hours could add up to as many as 15 hours per week or more for an individual employee.

17.

The plaintiffs, when they were hired to work at The Chimes, were informed that there was only one restriction on the number of shifts per week that they could work – they could not work *on the clock* for more than 40 hours in a single workweek.

18.

Plaintiffs were told that, if they wished to maximize the number of lunch and dinner shifts that they could work in a single week, they would have to perform their mandatory pre- and post-shift work off the clock. For example, The Chimes opens for lunch every day at 11:00 a.m., but servers are required to arrive at 10:00 a.m. in order to roll silverware, move tables and chairs into

place, and perform various other tasks. To maximize the number of tipped shifts they could work, plaintiffs were encouraged not to clock in when they arrived at 10:00 a.m., but to wait until they were assigned their first table to clock in. This would normally be anywhere between 11:00 a.m. and 11:30 a.m. The Chimes' payroll records will confirm that the average clock-in time for a lunch shift is not 10:00 a.m. (the time when servers are required to arrive to begin work) but at 11:00 a.m or even later, when individual servers begin to be assigned tables.

19.

Likewise, after each shift, every server at The Chimes is required to work anywhere from 45 minutes to an hour cleaning the restaurant, rolling silverware, making sure sauce bottles are full, etc. If the plaintiffs wished to work the maximum number of shifts possible, they would also have to perform this post-shift side work off the clock, and without compensation.

20.

This practice of working off the clock, and only clocking in during the time when the server is actually waiting on tables, has become the norm at The Chimes. Chimes management and ownership are aware of the thousands of uncompensated hours worked by their servers. Over the years, their scheme has resulted in a huge savings in labor costs for The Chimes, enriching defendants at the direct expense of their employees.

21.

The defendants willfully devised this system as a way to significantly decrease labor costs. Their plan was simple – by announcing the rule that servers could not be clocked in for more than 40 hours per week, defendants knew that most of their servers would perform their non-tipped work off the clock in order to maximize the number of tipped meal shifts they could work. Any

plaintiff or member of the collective action class who refused to work off the clock would be limited in the number of shifts they could work.

22.

During their time working at The Chimes, the named plaintiffs personally observed that the majority of servers there worked multiple hours each week performing non-tipped work before and after each shift. The practice continues to this day.

**COLLECTIVE ACTION ALLEGATIONS**

23.

Plaintiffs bring this suit as a collective action pursuant to 29 U.S.C. § 216(b) on behalf of themselves and all others employed by defendants as servers at The Chimes within the three years prior to the filing of this complaint who, like plaintiffs, were subjected to the illegal employment scheme described herein.

24.

Plaintiffs have consented in writing to be a part of this action. Their signed consent forms are attached as Exhibit A to this Complaint.

25.

As this case proceeds, it is likely that numerous other individuals will file consent forms and join this action as "opt-in" plaintiffs.

26.

All servers who have worked at The Chimes during the past three years, like plaintiffs, were subjected to the illegal payroll practices described herein. Defendants maintained a common pay practice or policy for all server employees, and the members of the collective action class are similarly situated to plaintiffs.

27.

Defendants' servers all perform similar job functions and duties. Like the named plaintiffs, all servers at The Chimes perform the same duties, including but not limited to taking food orders, processing credit card and cash transactions, cleaning the restaurant, and performing the various other tasks required before and after each lunch and dinner shift.

28.

Although the exact amount of damages of each person in the class may vary, damages for each individual can be calculated using the same method and formula.

29.

Defendants possess the names and contact information of the FLSA Collective in their records.

30.

The FLSA Collective should be allowed to receive notice about this lawsuit and given an opportunity to join. Like the plaintiffs, these similarly situated employees are entitled to recover their unpaid overtime wages, liquidated damages, attorneys' fees, and other damages. Therefore, notice is appropriately sent to the following class:

> **All individuals employed in the position of server at The Chimes restaurants now or at any time during the three years preceding the filing of this lawsuit.**

31.

Defendants willfully engaged in a pattern of violating the FLSA as described in this complaint in ways including, but not limited to, failing to pay their employees regular and overtime compensation for the pre- and post-shift worked described above. Defendants' conduct constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255.

## FLSA VIOLATION I: UNPAID WAGES

32.

The Fair Labor Standards Act requires that employers pay their employees at least the federal minimum wage for all time spent working for the employer.

33.

As described above, defendants pressured servers to perform work off the clock, without compensation, before and after each shift.

34.

All of the plaintiffs and collective action class were subject to the common practice whereby defendants would pressure them to perform certain pre- and post-shift duties off the clock. Many of the plaintiffs and collective action class members worked 15 or more off-the-clock hours per workweek.  Defendants have never compensated them for this time.

## FLSA VIOLATION II:  IMPROPER DEDUCTION OF FEDERAL TIP CREDIT

35.

For hours that defendants *did* compensate the plaintiffs and the collective action class, defendants improperly paid them a rate that was below the federal minimum wage.

36.

Defendants were not eligible to avail themselves of the federal tipped minimum wage rate because they failed to inform plaintiffs and members of the collective action class of the provisions of subsection 203(m) of the FLSA.

37.

Additionally, defendants were not eligible to avail themselves of the federal tipped minimum wage rate because the amount of uncompensated side work performed before, during

and after the shifts worked by plaintiffs and collective action class were neither contemporaneous with their tipped duties or within a reasonable period before and after their tipped duties. Indeed, on many occasions the time spent performing non-tipped work for a particular shift could actually exceed the amount of time spent performing tipped duties for that shift.

## **FLSA VIOLATION III: FAILURE TO PAY OVERTIME**

38.

Plaintiffs and members of the collective action class who worked off the clock for defendants often worked more than 40 hours on aggregate per workweek due to the policies and practices of the defendants.

39.

The FLSA mandates that employees are entitled to overtime premium pay at a rate of no less than one and one-half times the employee's regular rate for all hours worked in excess of 40 hours per workweek.

40.

Defendants have willfully failed to pay overtime to plaintiffs and the FLSA collective action class for hours worked in excess of 40 hours per workweek.

41.

As the direct and proximate result of defendants' unlawful conduct, plaintiffs and the collective action class have suffered and will continue to suffer a loss of income and other damages. Plaintiffs and the collective action class are entitled to liquidated damages and attorneys' fees and costs incurred in connection with this claim.

42.

The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of the FLSA. Defendants knew or showed reckless disregard for the fact that their compensation practices were in violation of the FLSA.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiffs, on behalf of themselves and the FLSA collective action class, pray for judgment against defendants as follows:

A. Designation of this action as a collective action on behalf of plaintiffs and those similarly situated, and prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all those similarly situated apprising them of the pendency of this action, and permitting them to assert timely FLSA claims in this action by filing individual consent forms;

B. A finding that plaintiffs and the FLSA Collective are non-exempt employees entitled to protection under the FLSA;

C. A finding that defendants violated the overtime provisions of the FLSA;

D. A finding that defendants illegally failed to pay for off-the-clock hours worked by plaintiffs and the collective action class;

E. A finding that defendants improperly availed themselves of the federal tip credit and illegally paid a sub-minimum wage hourly rate to plaintiffs and the collective action class;

F. A finding that defendants' violations of the FLSA were willful;

G. Judgment against defendants in the amount of plaintiffs' and the collective action class members' uncompensated wages and unpaid overtime wages at the applicable rates;

H. An award of all damages, liquidated damages, pre-judgment interest and/or post-judgment interest;

I. An award of attorneys' fees and costs incurred in prosecuting this action;

J. Leave to add additional plaintiffs by the filing of written consent forms or any other method approved by the Court; and

K. For such other and further relief, in law or equity, as this court may deem appropriate and just.

Respectfully Submitted,

**ESTES DAVIS LAW, LLC**

/s/ Daniel B. Davis
Daniel B. Davis (La. Bar 30141)
dan@estesdavislaw.com
Randall E. Estes (La. Bar 22359)
randy@estesdavislaw.com
Vivian Jeansonne (La. Bar 37177)
vivian@estesdavislaw.com
850 North Boulevard
Baton Rouge, LA 70802
Telephone: (225) 336-3394
Facsimile: (225) 384-5419
*Attorneys for Plaintiffs*