UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **KARLY KYZAR, ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 19-521-JWD-RLB** |
| **BARCO ENTERPRISES, INC., ET AL.** | |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS UNDER RULE 12(B)(1) OR 12(B)(3) AND COMPEL ARBITRATION**

There is no arbitration agreement to enforce. The plaintiffs provided their electronic signatures only to acknowledge review of an electronic copy of the Chimes' "Employee Handbook" (the "Handbook"). The Handbook, at page 28, contains an unexecuted "Agreement for Employment at Will & Arbitration" (the "Agreement").[1] Within that unsigned Agreement is the arbitration provision the Defendants now ask this Court to enforce. But the Agreement was clearly meant to be executed separately – it has its own signature line, and it even requires that the employee initial a paragraph if he or she wishes to opt out of arbitration for Title VII claims.[2] Electronically signing for receipt of the Handbook did not constitute execution of the Agreement.

Further, the Handbook – which encompasses the Agreement – contains two disclaimers that are fatal to the defendants' motion to compel arbitration. First, the Handbook declares that "[n]either this handbook nor any other The Chimes documents confers any contractual right, express or implied, to remain in your job for any definite term, ***nor any guaranteed or fixed terms and conditions of employment***."[3]   Second, the Handbook reserves to The Chimes the

---

[1] Exhibit 2 is a copy of the Employee Handbook. It was provided to plaintiffs via email from counsel for defendants.
[2] Exhibit 2 at page 28 (the last page of the Employee Handbook).
[3] Exhibit 2, Employee Handbook, Chapter 1, ¶2 (emphasis added).

unilateral right "to change or terminate any procedures, practices, policies or benefits described in this handbook, at the company's sole discretion." The Fifth Circuit has held such agreements to be illusory promises and unenforceable due to the unilateral right of the employer to alter the agreement at its own whim.

**Argument**

The question of arbitrability is properly before this Court. The Supreme Court has made clear that unless the parties "clearly and unmistakably" provide that the arbitrator should answer it, the "question of arbitrability" is "an issue for judicial determination."[4] To determine whether the parties have agreed to arbitrate a particular claim, the court considers: "(1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement."[5]

Plaintiffs do not dispute that this matter falls within the scope of the arbitration agreement that The Chimes defendants seek to enforce. This FLSA action arises out of plaintiffs' employment as servers at The Chimes. Instead, the question here is simply whether the parties ever agreed to arbitrate their disputes. For the reasons set forth below, no arbitration agreement exists between the parties, and the Court should deny the defendants' motion.

*The Plaintiffs Signed a Receipt for The Chimes Employee Handbook; The Agreement – a Subsection of the Handbook – Contemplated That It Would Be Executed Separately.*

Defendants, in support of their Motion to Compel Arbitration, supplied this Court with a declaration by Matthew Provencher, who oversees all Human Resources activities for The Chimes defendants.[6] Provencher's Declaration is carefully worded. He correctly describes the

---

[4] *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83, 123 S. Ct. 588, 154 L. Ed. 2d 491 (2002).
[5] *JP Morgan Chase & Co. v. Conegie ex rel. Lee*, 492 F.3d 596, 598 (5th Cir. 2007) (internal quotation marks omitted).
[6] The Provencher Declaration is an exhibit to Defendants' Motion to Compel Arbitration. Rec. Doc. No. 12.2.

Agreement as part of the Employee Handbook, as opposed to a stand-alone document.[7] However, Provencher proceeds to conflate the Handbook and the Agreement contained within it, as pertains to the plaintiffs' signatures. According to Provencher, "[a]t the end of the Agreement, the employee is invited to affix her electronic signature *to the Agreement*."[8]

But plaintiffs did not affix their signatures to the Agreement. Beside each of the signature blocks for the three plaintiffs appear the words: "Employee Handbook THE CHIMES" along with the date, time and IP address from which the Handbook (not the Agreement) was signed.[9] The plaintiffs' signatures simply acknowledged receipt of an online copy of the Employee Handbook, of which the Agreement is a subpart.

Although they now ask the Court to treat the Agreement as if it had been separately executed, defendants do not address the Agreement's opt-out provision for arbitration of Title VII claims. Provencher's declaration makes it clear that the plaintiffs were never provided an opportunity to sign the Agreement *or to initial the opt-out paragraph*.[10] Electronic signatures on the Employee Handbook receipt could not constitute execution of an Agreement that has its own signature line and which, by its own terms, contemplates that the employee may only opt out of arbitration for Title VII claims by initialing the relevant paragraph of an Agreement.

### *The Employee Handbook's Disclaimers Render the Unsigned Agreement Ineffective Unless Separately Executed.*

As favorable as courts have become toward arbitration, there must still at least be an arbitration agreement between the parties. Tucking an arbitration clause into a draft agreement

---

[7] *See Provencher Declaration*, Rec. Doc. 12.2, ¶3
[8] *Id.*
[9] *See* Exhibit 1, plaintiffs' signature blocks.
[10] Plaintiffs are not asserting Title VII claims. If they were, however, Defendants surely would not argue that signing the receipt for the Handbook alone could require plaintiffs to arbitrate such a claim. That theoretical case highlights the fact that the Agreement required separate execution, but the argument is equally applicable here.

(one that requires the employee both to sign her name and choose whether to initial a Title VII arbitration opt-out paragraph), which in turn is incorporated into an Employee Handbook, does not create a binding arbitration agreement.

The Chimes Defendants, by making the Agreement just another section of the Employee Handbook (as opposed to a stand-alone agreement), subjected the Agreement to all of the terms, conditions and disclaimers of the Handbook itself. The Handbook contains two important disclaimers about its contents (including the Agreement) that are fatal to the defendants' motion to compel arbitration. This is a glaring problem for defendants, because the Agreement must be interpreted in light of the terms of the Handbook of which it is a part. When they filed their Motion to Compel Arbitration, defendants did not provide this Court with a copy of the Employee Handbook.[11]

The Handbook completely undermines the defendants' motion. First, **the Handbook declares that "[n]either this handbook nor any other The Chimes documents confers any contractual right, express or implied, to remain in your job for any definite term, _**nor any guaranteed or fixed terms and conditions of employment**_**."[12] Nothing in the Handbook can establish the terms or conditions of employment at The Chimes. This includes the unsigned Agreement, which Defendants concede is part of the Handbook.[13] Similar disclaimers have proven fatal to arbitration agreements contained within employment manuals, as opposed to agreements separately presented to the employee for execution.[14]

---

[11] Defendants provided plaintiffs a copy of the Employee Handbook via email on October 30, 2019.
[12] *See* The Chimes Employee Handbook, Exhibit 2, at Chapter 1, ¶ 2 (emphasis added).
[13] *See* Declaration of Matthew Provencher, Rec. Doc. No. 12.2 at ¶3. *See also* The Chimes Employee Handbook, Exhibit 2. The Agreement is listed in the Table of Contents and appears at page 28 of the Handbook.
[14] *See, e.g., Esparza v. Sand & Sea, Inc.,* 2 Cal.App.5th 781 (2016) (applying California law, the court refused to enforce the arbitration agreement that was contained within the employee handbook based on

The Handbook also adds another disclaimer, reserving the right to "change or terminate any procedures, practices, policies or benefits described in this handbook, at the company's sole discretion."[15] The Fifth Circuit has held that reserving such unilateral authority to alter the terms of the agreement may render the agreement illusory, and therefore unenforceable.[16]

The Fifth Circuit has ruled in some instances that such unilateral authority to amend the arbitration agreement may be cured where the employer is expressly required to notify employees in advance of any amendment to the terms of the arbitration agreement.[17] That is not the case here. The Handbook simply states, without elaborating, that "[w]e will inform you of any changes as they occur."[18] The Chimes claims it will inform employees of changes, but such notice is not a requirement for altering the Handbook. It certainly need not be given in advance.

Finally, the Handbook confers unfettered discretion on The Chimes to change any provision of the Handbook, including the purported arbitration clause, in such a way that it could theoretically apply retroactively – including with respect to disputes arising *before* such an amendment. Applying Texas law, the Fifth Circuit has held such an arbitration agreement illusory and unenforceable, even where advance notice was required.[19]

---

the language that "…this handbook is not intended to be a contract (express or implied), nor is it intended to otherwise create any legally enforceable obligations on the part of the Company or its employees."

[15] *See* The Chimes Employee Handbook, Exhibit 2, at Chapter 1, paragraph 3.

[16] *See. e.g., Carey v. 24 Hour Fitness, USA, Inc.*, 669 F.3d 202 (5th Cir. 2012) (the Court held the language in an employer's at-will handbook disclaimer retained too much authority to alter the arbitration agreement; therefore, the agreement was illusory and unenforceable.)
*See also Nelson v. Watch House Int'l, LLC*, 815 F.3d 190 (5th Cir. 2016) (the court held that the arbitration agreement included in an employment contract was illusory and unenforceable because its "savings clause" failed to expressly require that advance notice regarding any amendment or termination of the arbitration agreement be provided to workers.)

[17] *See, e.g., Iberia Credit Bureau, Inc. v. Cingular Wireless, LLC*, 379 F.3d 159, 173-174 (5th Cir. 2004). In *Iberia,* unlike the instant matter, the defendant could only change the terms of an arbitration provision "upon notice." In this case, the Chimes claims that it will provide notice as changes are made. It is not a requirement.

[18] *See* The Chimes Employee Handbook, Exhibit 2, at Chapter 1, ¶ 3.

[19] *See Morrison v. Amway Corporation*, 517 F.3d 248, 254 (5th Cir. 2008).

## *Conclusion*

The plaintiffs never executed the draft arbitration agreement that The Chimes included as a subsection of its Employee Handbook. They did not refuse to sign it – they were simply never given an opportunity to do so. Instead, they simply signed a receipt indicating that they had received an electronic copy of The Chimes' employee handbook. The Handbook expressly provided that nothing in it constituted the terms and conditions of employment. The Agreement, at least as a subpart of the Handbook, is not sufficient to compel arbitration. It was meant to be executed separately from the Handbook. There is no arbitration agreement and Defendants' motion should be denied.

Respectfully Submitted,

**ESTES DAVIS LAW, LLC**

/s/ Daniel B. Davis
Daniel B. Davis (La. Bar 30141)
dan@estesdavislaw.com
Randall E. Estes (La. Bar 22359)
randy@estesdavislaw.com
Vivian Jeansonne (La. Bar 37177)
vivian@estesdavislaw.com
850 North Boulevard
Baton Rouge, LA 70802
Telephone: (225) 336-3394
Facsimile: (225) 384-5419
*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I certify that on this 11th day of November, 2019, a true and correct copy of the foregoing pleading was filed electronically using the CM/ECF system and that all counsel of record were served via that system.

*/s Daniel B. Davis*